IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JAVIER RIVERA-BENITO | : | MOTION TO VACATE |
| a/k/a VENINO VARGAS, | : | 28 U.S.C. § 2255 |
| BOP No. 58470-019, | : | |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 4:10-CR-19-RLV-WEJ-2 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
|     Respondent. | : | 4:12-CV-109-RLV-WEJ |

**FINAL REPORT AND RECOMMENDATION**

Movant, Javier Rivera-Benito, represented by counsel, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [146] ("Motion to Vacate"), and a Brief in Support [154]. Respondent has filed a Response in Opposition. [160] For the reasons stated below, the undersigned **RECOMMENDS** that the Motion to Vacate be **DENIED**.

**I.   PROCEDURAL HISTORY**

Mr. Rivera-Benito was one of five defendants indicted in the Northern District of Georgia on May 20, 2010 on multiple counts of drug and immigration offenses. (Indict. [1].)  Mr. Rivera-Benito was charged with the following offenses:  (1) conspiracy to possess with intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii), 841(b)(1)(C), & 846 (count one); (2)

possession with intent to distribute methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) (count eleven); (3) possession with intent to distribute 500 grams or more of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(viii) (count twelve); and (4) illegal re-entry following deportation, in violation of 8 U.S.C. §§ 1326(a) & (b)(2) (count fourteen). (Id. at 1-2, 5-6, 7.)

On March 2, 2011, Mr. Rivera-Benito pleaded guilty to counts twelve and fourteen pursuant to a negotiated plea agreement in which the government dismissed the remaining counts. [96, 97] On May 12, 2011, the Court sentenced Mr. Rivera-Benito to a total term of imprisonment of 121 months followed by five years of supervised release. [121] Mr. Rivera-Benito did not appeal, but he timely filed his Motion to Vacate on May 10, 2012, within the one-year period of limitation provided by 28 U.S.C. § 2255(f).

## II. STANDARD OF REVIEW

A motion to vacate, set aside, or correct a sentence may be made "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject

to collateral attack . . . ." 28 U.S.C. § 2255(a). "[C]ollateral review is not a substitute for a direct appeal . . . ." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988) (per curiam) (quoting United States v. Capua, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981)).

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. § 2255 challenge" unless the movant "overcome[s] this procedural default by showing both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004). "[T]o show cause for procedural default, [a § 2255 movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [his] own conduct." Lynn, 365 F.3d at 1235. To demonstrate actual prejudice, a movant must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece v. United States, 119 F.3d 1462, 1467 (11th Cir.

3

1997) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). As an alternative to showing cause and actual prejudice, a § 2255 movant may overcome a procedural default if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234-35 (quoting Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam)) (internal quotation marks omitted). "[A]ctual innocence means factual innocence, not mere legal innocence." Id. at 1235 n.18 (citing Bousley v. United States, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted). Despite the procedural default rule, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro v. United States, 538 U.S. 500, 509 (2003).

A § 2255 movant "has the burden of sustaining his contentions by a preponderance of the evidence." Tarver v. United States, 344 F. App'x 581, 582 (11th Cir. 2009) (per curiam) (quoting Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980)). However, the Court need not conduct an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). The undersigned **REPORTS** that an evidentiary

4

hearing is not needed because the § 2255 motion and record in this case conclusively show that Mr. Rivera-Benito is not entitled to relief.

## III. DISCUSSION

Mr. Rivera-Benito asserts four grounds in his Motion to Vacate: (1) he "was incompetent to enter a plea because of his mental retardation"; (2) "counsel was ineffective for failing to investigate [Mr. Rivera-Benito's] mental retardation and for failing to litigate issues surrounding [his] mental retardation"; (3) his "guilty plea was not knowingly, intelligently, and voluntarily entered"; and (4) the Court "failed to inquire about [Mr. Rivera-Benito's] competency prior to accepting the guilty plea." (Mot. Vacate 4-9.)

### A. Competency

Because Mr. Rivera-Benito's first and fourth grounds concern his competency to plead guilty, the undersigned addresses them together, beginning with the fourth ground. Mr. Rivera-Benito's claim that the Court should have conducted a competency hearing is a procedural competency claim pursuant to Pate v. Robinson, 383 U.S. 375 (1966). See James v. Singletary, 957 F.2d 1562, 1569-71 (11th Cir. 1992). A procedural competency claim "can and must be raised on direct appeal." Id. at 1572. Mr. Rivera-Benito did not appeal, and therefore, his procedural competency claim is

5

procedurally defaulted.[1] He does not attempt to overcome the default by showing cause and actual prejudice or demonstrating actual innocence. Accordingly, ground four fails.

Ground one, in which Mr. Rivera-Benito asserts that he was incompetent when he pleaded guilty, is a substantive competency claim. See James, 957 F.2d at 1571. "[T]his kind of claim is not subject to procedural default and must be considered on the merits." Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005) (per curiam) (internal quotation marks omitted).[2]

> Incompetency means 'suffering from a mental disease or defect rendering [defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.' 18 U.S.C. § 4241(a). [A movant] raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate [his] incompetency by a preponderance of the evidence. . . . To show entitlement to a hearing on his substantive incompetency claim, [movant] must present clear and

---

[1] Mr. Rivera-Benito's plea agreement contained an appeal waiver, but such a provision "cannot serve to bar [defendant's] claim that he was incompetent to plead guilty and be sentenced." United States v. Johns, 390 F. App'x 963, 969 n.2 (11th Cir. 2010) (per curiam). The "waiver itself would be invalid if [defendant] lacked the mental competence to understand and appreciate the nature and consequences of the plea agreement." Id. Therefore, despite the appeal waiver, Mr. Rivera-Benito could have raised his procedural competency claim on appeal.

[2] The government argues that the appeal waiver in Mr. Rivera-Benito's plea agreement prevents him from pursuing his substantive competency claim in his Motion to Vacate (see Resp't Resp. 12), but that argument is incorrect. See Johns, 390 F. App'x at 969 n.2.

6

> convincing evidence creating a real, substantial and legitimate doubt [about] his competence to stand trial. . . . This standard of proof is high; and the facts must positively, unequivocally, and clearly generate the legitimate doubt.

Id. at 1298-99 (citations and internal quotation marks omitted). Mr. Rivera-Benito's evidence consists of psychological evaluations by Dr. Jorge A. Herrera and Dr. Adriana L. Flores, and the transcript of the plea colloquy.

### 1. Dr. Herrera

Dr. Herrera evaluated Mr. Rivera-Benito on March 20, 2007 in connection with his sentencing in an earlier criminal case.[3] Mr. Rivera-Benito cites Dr. Herrera's conclusion:

> Mr. [Rivera-Benito] has a basic notion of the role of the prosecutor, the defense attorney, the judge, and the jury. In terms of his ability to assist his attorney in his own defense, Mr. [Rivera-Benito] thinks and speaks concretely and at a level consistent with low level of education and intellectual functioning. However, so long as counsel provides repeated explanations of concepts and spends sufficient time with Mr. [Rivera-Benito, he] appears to be able to assist his attorney.

(Movant's Br. 9.)

---

[3] Mr. Rivera-Benito pleaded guilty to possession of a firearm by an illegal alien and illegal re-entry following deportation and was sentenced to 27 months imprisonment followed by three years of supervised release. See Judgment, United States v. Vargas, No. 1:06-cr-403-WSD-AJB-1 (N.D. Ga. June 29, 2007). Mr. Rivera-Benito was indicted, convicted, and sentenced as Venino Vargas a/k/a Javier Rivera-Benito.

7

### 2. **Dr. Flores**

Dr. Flores evaluated Mr. Rivera-Benito on June 27, 2011, nearly four months after he pleaded guilty in the present case. Mr. Rivera-Benito's current counsel requested the evaluation to (1) prepare for Mr. Rivera-Benito's supervised release revocation hearing in his earlier case and (2) review his guilty plea in this case. (See Movant's Ex. [146-1] 1.) Dr. Flores explained that Mr. Rivera-Benito was raised in Mexico in a small village on a mountain, and that he did not have formal schooling. (Id. at 2.) According to Dr. Flores, Mr. Rivera-Benito had suffered a head injury "from falling on rocks, at the age of eight or so," but no medical treatment was available in his village. (Id. at 2-3.) Dr. Flores noted Dr. Herrera's testing findings that Mr. Rivera-Benito's "intellectual functioning fell within the Moderate Mental Retardation range." (Id. at 3.) Dr. Flores stated that Mr. Rivera-Benito's memory was poor and that she needed to repeat many questions for him. (Id. at 5-7.)

In discussing supervised release, Dr. Flores found that Mr. Rivera-Benito "was not aware that he was on supervised release," "did not understand what supervised release meant," and "did not know the conditions of his supervised release." (Movant's Ex. 7.) Nevertheless, Mr. Rivera-Benito "demonstrated some understanding" after Dr. Flores explained those issues. (Id.) Mr. Rivera-Benito was able to define guilty and

8

not guilty pleas and knew the roles of the prosecutor, defense attorney, and judge. (Id. at 8.)  After Dr. Flores explained plea bargaining and the trial process, Mr. Rivera-Benito demonstrated adequate or fair understanding.  (Id.)  Dr. Flores concluded that Mr. Rivera-Benito had sufficient understanding and verbal skills to assist counsel in the supervised release revocation hearing despite his cognitive limitations.  (Id.)  Dr. Flores was concerned by counsel's report that Mr. Rivera-Benito "lost the knowledge" that Dr. Flores had given him "in less than 10 days," but she was not surprised because of "the extent of his cognitive deficits."  (Id. at 8-9.)  Because Dr. Flores believed that a supervised release revocation hearing was "fairly basic," she concluded that Mr. Rivera-Benito was competent to proceed with that hearing.  (Id.)

In discussing the guilty plea in this case, Dr. Flores noted Mr. Rivera-Benito's knowledge that he had pleaded guilty to "a drug-related offense," but he denied guilt and "did not know the exact drug offense."  (Movant's Ex. 9.)  When Dr. Flores explained that the offense involved methamphetamine, Mr. Rivera-Benito "knew it was a drug but did not know what it was."  (Id.)  Dr. Flores stated: "[I]t does not appear that [Mr. Rivera-Benito] understood the evidence against him and . . . he did not have the ability to weigh this information . . . ."  (Id.)  Dr. Flores explained the concept of conspiracy several times, but Mr. Rivera-Benito could not grasp the idea.  (Id.)  Mr.

9

Rivera-Benito "demonstrated poor understanding of the adversarial nature of the legal process" until Dr. Flores explained it. (Id. at 10.) Dr. Flores stated that Mr. Rivera-Benito did not understand or "fully appreciate" the concepts of the trial, jury, witnesses, evidence, plea bargaining, and appeal when he pleaded guilty nearly four months before the evaluation. (Id.) Dr. Flores indicated that the severity of the charges bears on competence, and that Mr. Rivera-Benito lacked the necessary verbal and abstract reasoning skills when he pleaded guilty to the "more complicated charges" in this case. (Id. at 10-11.) Therefore, Dr. Flores concluded that Mr. Rivera-Benito was not competent to have pleaded guilty. (Id. at 11.) However, Dr. Flores observed that "competency is a 'here and now' factor," and she did not explore whether that observation cast doubt on her conclusion regarding Mr. Rivera-Benito's competency in the past. (Id. at 10.)

### 3.    **Plea Colloquy**[4]

By the undersigned's count, Mr. Rivera-Benito asked the Court for clarification or stated that he did not understand the question or had forgotten something nine times during the plea colloquy. (See Tr. [133] 4, 6-10, 12.) After the Court restated the

---

[4] During the plea colloquy, Mr. Rivera-Benito agreed that his "true name" is Jesus Santana-Rivera. (Tr. [133] 2.)

10

question or provided further explanation, Mr. Rivera-Benito answered the question, indicating that he understood in all nine of those instances. (Id.) In contrast, Mr. Rivera-Benito answered the Court's questions without the need for clarification or further explanation thirty-six other times during the plea colloquy.[5] (Id. at 4-10, 12-16, 19.) Mr. Rivera-Benito stated that he understood the charges and the plea agreement, discussed the case with counsel, and was guilty. (Id. at 5-7, 19.)

### 4. Analysis

The following evidence supports Mr. Rivera-Benito's competency to plead guilty in this case. Dr. Herrera found that despite Mr. Rivera-Benito's moderate mental retardation, he had a basic understanding of the trial process and could assist his attorney as long as he received repeated explanations and sufficient time. (Movant's Br. 9.) "Mental retardation alone does not make a person incompetent to stand trial." United States v. Glaspy, 401 F. App'x 430, 432 (11th Cir. 2010) (per curiam) (citing Atkins v. Virginia, 536 U.S. 304, 318 (2002)). Dr. Flores also found that Mr. Rivera-Benito could understand plea bargaining and the trial process after those subjects were explained to him. (Movant's Ex. 8.) Even though Mr. Rivera-Benito could not

---

[5] The total of thirty-six times does not include the nine instances in which Mr. Rivera-Benito answered the questions that the Court repeated.

11

remember the relevant information less than ten days later, Dr. Flores nonetheless determined that Mr. Rivera-Benito was competent to proceed with his supervised release revocation hearing. (Id. at 8-9.) During the plea colloquy in this case, Mr. Rivera-Benito answered the Court's questions without the need for clarification or further explanation four times as often as he requested clarification or further explanation. (See supra Part III.A.3.) When Mr. Rivera-Benito received clarification or further explanation from the Court, he answered the question, indicating that he understood. (Id.)

The only evidence raising some doubt regarding Mr. Rivera-Benito's competency is Dr. Flores's retrospective evaluation in this case. Although Dr. Flores stated that "competency is a 'here and now' factor," she did not explain how she could determine that Mr. Rivera-Benito was incompetent to plead guilty in this case almost four months before the evaluation. (Movant's Ex. 10.) Dr. Flores noted that Mr. Rivera-Benito "did not know [his] exact drug offense" and did not know anything about methamphetamine other than that it is a drug, but even a convicted defendant without cognitive deficits would not necessarily have that knowledge. (Id. at 9.) Dr. Flores attributed Mr. Rivera-Benito's poor understanding of legal concepts in this case to incompetency, but Dr. Flores failed to consider the alternative explanation of poor

12

AO 72A
(Rev.8/8
2)

memory, despite her own observation of that trait in Mr. Rivera-Benito and her use of that explanation in the supervised release revocation case. (Id. at 6, 8-11.) "[L]ack of memory does not necessarily negate [the] ability to assist counsel and understand the proceedings." United States v. Dewhart, No. 2:06-CR-94-WKW, 2009 WL 1850181, at *3 (M.D. Ala. June 26, 2009). Dr. Flores's evaluation was thus internally inconsistent.

Dr. Flores emphasized that the charges to which Mr. Rivera-Benito pleaded guilty in this case were "more complicated" than a charge of violating the terms of supervised release, thus requiring higher verbal and abstract reasoning skills than he could demonstrate. (Movant's Ex. 10-11.) However, Dr. Flores found that Mr. Rivera-Benito could understand plea bargaining and the trial process after those subjects were explained to him. (Id. at 8.) That finding was not dependent on the complexity of the specific charge. (Id.) Furthermore, one of the two charges in this case was illegal re-entry following deportation, the same charge to which Mr. Rivera-Benito had pleaded guilty in 2007, when Dr. Herrera found that Mr. Rivera-Benito was competent. (See supra note 3.) The undersigned recognizes that Dr. Flores expressed some disagreement with Dr. Herrera's conclusion. (Movant's Ex. 11-12.) "[F]aced with diametrically opposite expert testimony, a district court does not clearly err simply by

13

crediting one opinion over another where other record evidence exists to support the conclusion." Battle, 419 F.3d at 1299 (citing and quoting Johnston v. Singletary, 162 F.3d 630, 639 (11th Cir. 1998)) (internal quotation marks omitted). Dr. Herrera's opinion is consistent with Mr. Rivera-Benito's behavior during the plea colloquy in this case, when he answered the Court's questions without the need for clarification or further explanation four times as often as he requested clarification or further explanation. (See supra Part III.A.3.) Dr. Herrera's opinion is also consistent with Dr. Flores's finding regarding Mr. Rivera-Benito's ability to understand plea bargaining and the trial process following explanation. (Movant's Ex. 8.)

Although Dr. Flores's retrospective evaluation raises some doubt, it does not satisfy the high standard for entitlement to an evidentiary hearing. The evaluation does not constitute "clear and convincing evidence creating a real, substantial and legitimate doubt" regarding Mr. Rivera-Benito's competency to plead guilty. Battle, 419 F.3d at 1299. Mr. Rivera-Benito has not demonstrated his incompetency by a preponderance of the evidence. Id. at 1298. Therefore, Mr. Rivera-Benito's substantive competency claim (ground one) fails.

14

### B.     Ineffective Assistance of Counsel

In ground two, Mr. Rivera-Benito claims that his trial counsel provided ineffective assistance. In order to demonstrate ineffective assistance of counsel, a convicted defendant must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). As to the first prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). As to the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court may consider either prong first and need not address the other "if the defendant makes an insufficient showing on one." Id. at 697.

"[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an

15

informed and conscious choice between accepting the prosecution's offer and going to trial." Searcy v. Fla. Dep't of Corr., 485 F. App'x 992, 997 (11th Cir. 2012) (per curiam) (quoting Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam)) (internal quotation marks omitted). A defendant who has pleaded guilty must satisfy the second prong of Strickland by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Mr. Rivera-Benito argues that his counsel was deficient because he first learned of Mr. Rivera-Benito's mental retardation when reading the presentence investigation report. (Movant's Br. 20.) Mr. Rivera-Benito contends that counsel could have raised the issue of competency and obtained a more favorable plea agreement if he had recognized the mental retardation before the guilty plea. (Id. at 21-22.)

However, counsel suggested at the plea colloquy that he was aware of Mr. Rivera-Benito's difficulty understanding legal proceedings. Counsel stated that he spent approximately three and one-half hours "painstakingly" reviewing the plea agreement with Mr. Rivera-Benito on the day before the plea colloquy. (Tr. 11.) Counsel also stated his belief that Mr. Rivera-Benito was pleading guilty knowingly and voluntarily. (Id. at 19-20.) It does not appear from the transcript of the plea

16

colloquy that counsel was deficient. Even if the undersigned assumes that counsel's investigation of the case was deficient, Mr. Rivera-Benito has not shown prejudice. Mr. Rivera-Benito does not assert that he would have insisted on going to trial if he had known that counsel was unaware of the mental retardation prior to the guilty plea. Therefore, ground two fails.

### C. <u>Voluntariness of Guilty Plea</u>

In ground three, Mr. Rivera-Benito claims that his "guilty plea was not knowingly, intelligently, and voluntarily entered." (Mot. Vacate 7.) Quoting Dr. Herrera's report in part, Mr. Rivera-Benito states that his "mental retardation, limited verbal abilities, 'poor memory, limited understanding of what goes on around him, and significantly decreased ability to use conceptual skills,' rendered his plea unknowing and involuntary." (Movant's Br. 23.) Mr. Rivera-Benito also contends that: (1) the plea agreement was too complicated for him to understand; (2) he "did not understand many of the questions" during the plea colloquy; (3) "mentally retarded individuals often answer in the affirmative in order to mask their lack of understanding or to please authority figures"; and (4) he did not have knowledge of methamphetamine and the concepts of conspiracy and appeal when evaluated by Dr. Flores. (<u>Id.</u> at 23-24.)

17

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998). Mr. Rivera-Benito did not appeal, and therefore, his claim is procedurally defaulted.[6] He does not attempt to overcome the default by showing cause and actual prejudice or demonstrating actual innocence. Accordingly, ground three fails.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists

---

[6] "Generally, a defendant who pleads guilty is precluded from challenging his conviction on appeal, except on the ground that the plea was involuntary." United States v. Hoobler, 252 F. App'x 983, 989 (11th Cir. 2007) (citing United States v. Kaiser, 893 F.2d 1300, 1302 (11th Cir. 1990)). Therefore, the appeal waiver in Mr. Rivera-Benito's plea agreement would not have prevented him from raising the voluntariness of his guilty plea on appeal. See id.

18

could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a [motion to vacate] on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (citing Slack, 529 U.S. at 484) (internal quotation marks omitted).

The undersigned recommends that a certificate of appealability be denied because the resolution of the issues presented is not debatable. If the Court adopts this recommendation and denies a certificate of appealability, Mr. Rivera-Benito is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

## V.  CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion to Vacate [146] be **DENIED** and that a certificate of appealability be **DENIED**.

19

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED**, this 11th day of September, 2013.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE