IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JAVIER RIVERA-BENITO | : | MOTION TO VACATE |
| a/k/a VENINO VARGAS, | : | 28 U.S.C. § 2255 |
| BOP No. 58470-019, | : | |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 4:10-CR-19-HLM-WEJ-2 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 4:12-CV-109-HLM-WEJ |

## SUPPLEMENTAL
## <u>FINAL  REPORT  AND  RECOMMENDATION</u>

Movant, Javier Rivera-Benito, represented by counsel, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [146] ("Motion to Vacate"), and a Brief in Support [154].  Respondent filed a Response in Opposition [160].  On September 11, 2013, the undersigned issued a Final Report and Recommendation ("Final R&R") that the Motion to Vacate be denied [169].  The District Court held the Final R&R in abeyance and returned the matter to the undersigned "to conduct an evidentiary hearing and then submit a supplemental report based upon the results of that hearing."  (See Order of Oct. 17, 2013 [175], at 3-4.)  The hearing was held on September 10 and October 23, 2014 [190, 192], and the

AO 72A
(Rev.8/8
2)

parties subsequently filed briefs [198, 200]. For the reasons stated below, the undersigned **RECOMMENDS** that the Motion to Vacate be **DENIED**.

## I.     STANDARD OF REVIEW

A motion to vacate, set aside, or correct a sentence may be made "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988) (per curiam)) (internal quotation marks omitted). A § 2255 movant "has the burden of sustaining his contentions by a preponderance of the evidence." Tarver v. United States, 344 F. App'x 581, 582 (11th Cir. 2009) (per curiam) (quoting Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980)).

2

## II.   **MOVANT'S GROUNDS**

Although movant asserts four grounds in his Motion to Vacate, his brief following the evidentiary hearing does not address his second ground, namely, that "[c]ounsel was ineffective for failing to investigate [movant's] mental retardation and for failing to litigate issues surrounding [his] mental retardation." (Mot. Vacate 5; see also Final R&R 15-17.)  Accordingly, for the reasons given in the Final R&R, the undersigned **RECOMMENDS** that movant be denied relief as to ground two of the Motion to Vacate.

The undersigned turns to the remaining grounds:  (1) movant "was incompetent to enter a plea because of his mental retardation" (ground one); (2) his "guilty plea was not knowingly, intelligently, and voluntarily entered" (ground three); and (3) the District Court "failed to inquire about [movant's] competency prior to accepting the guilty plea" (ground four).  (Mot. Vacate 4, 7-8.)

In the Final R&R, the undersigned reviewed psychological evaluations by Dr. Jorge A. Herrera and Dr. Adriana L. Flores, and the transcript of movant's plea colloquy.  (Final R&R 7-11.)  The evidentiary hearing included testimony by Dr. Herrera, Dr. Flores, Dr. Scott A. Duncan, and Attorney David Marshall, who represented movant in his criminal case.  (Tr. [191] 2; Tr. [195] 2.)  Among the nine

3

exhibits admitted into evidence, Dr. Duncan's psychological evaluation is especially significant, as the undersigned will explain below.

### A.   <u>Ground One</u>

Movant's assertion that he was incompetent when he pleaded guilty is a substantive competency claim. <u>See</u> <u>James v. Singletary</u>, 957 F.2d 1562, 1571 (11th Cir. 1992).

> Incompetency means suffering from a mental disease or defect rendering [defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  18 U.S.C. § 4241(a).  [A movant] raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate [his] incompetency by a preponderance of the evidence.

<u>Battle v. United States</u>, 419 F.3d 1292, 1298 (11th Cir. 2005) (per curiam) (citation and internal quotation marks omitted).

Movant relies on (1) the evaluations and testimony of Dr. Herrera and Dr. Flores, and (2) the nine instances during the plea colloquy in which movant asked the District Court for clarification or stated that he did not understand the Court's question or had forgotten something.  (Mov't Br. [198] 2-21.)  However, as the undersigned previously explained, Dr. Herrera found that movant could assist his attorney in his defense. (Final R&R 7.)  Dr. Flores found that movant could understand plea bargaining and the

4

trial process.  (Id. at 8-9.)  During the plea colloquy, movant answered the Court's questions without the need for clarification or further explanation thirty-six times, which was four times as often as he requested clarification or further explanation.  (Id. at 10-11.)  When movant received clarification or further explanation from the Court, he answered the question, indicating that he understood.  (Id.)

Dr. Duncan's evaluation also supports movant's competency to plead guilty in this case.  Dr. Duncan evaluated movant for eight hours on July 28, 2014, with the assistance of a Spanish interpreter, Dr. Alexandra Phipps, who is a licensed psychologist.  (Resp't Ex. 1, at 2.)  Although movant claimed that he spoke no English, a jail nurse who knew movant well informed Dr. Duncan that movant could speak and understand English "just fine."  (Id. at 10-11.)

Dr. Duncan explained that movant "presented as cooperative and friendly, but guarded, especially when he was asked direct questions about his knowledge of legal issues."  (Resp't Ex. 1, at 6.)  For example, movant stated that he was in a vehicle with friends when police stopped them for drinking in public and then discovered two guns in the vehicle.  (Id. at 4.)  Movant emphasized that he did not know anything about the guns.  (Id.)  When Dr. Duncan asked movant why he was concerned about the guns, "he hesitated and changed the subject" and then "refused to answer directly" when Dr.

5

Duncan asked a follow-up question. (Id.) Movant then claimed not to know that it was illegal for him to have a gun because he was a convicted felon. (Id.) As another example, movant complained that his attorney had not shown him the evidence of his guilt. (Id. at 6.) When Dr. Duncan then asked movant to explain the concept of evidence, he "shifted his stance and stated [that] he had no idea what 'evidence' meant." (Id.)

Dr. Duncan noted that movant often gave lengthy answers to non-legal questions but then claimed to know "very little about the legal system and how it worked." (Resp't Ex. 1, at 6.) For example, movant correctly remembered the five items that he had ordered from the commissary four days earlier, but he claimed not to remember his previous psychological evaluation. (Id.) Movant refused Dr. Duncan's attempt to administer a test measuring knowledge of legal issues. (Id. at 2, 13.) Dr. Duncan found that movant understood the concepts of evidence, plea bargaining, and guilt; the relative seriousness of different offenses; and the role of the judge and defense attorney. (Id. at 12.) Movant inconsistently stated that he did not understand the role of the prosecutor but did understand that the prosecutor asked Dr. Duncan to perform a psychological evaluation. (Id.)

6

Dr. Duncan administered subtests of the Wechsler Adult Intelligence Scale "that were least likely to be affected by language [differences]."  (Resp't Ex. 1, at 6.) Movant's performance worsened "with each subtest . . . even when [the subtests] measured the same general concept." (Id. at 7.)  Another subtest "strongly indicat[ed] that [movant] was consciously not putting forth a good effort." (Id.)  Dr. Duncan concluded that movant's "scores and performance style throughout the administration of the Wechsler scales [show that he was] feigning low intellect." (Id.)

Similarly, movant's score on the Beta III test of non-verbal intellectual ability indicated mild mental retardation, but that score was inconsistent with movant's own reported activities of driving, living independently, "building fences and landscaping for a combined five years," playing the piano and bass guitar in a band, entering the United States from Mexico alone three times, receiving wire transfers at a bank, buying bus tickets and twice traveling from Arizona to Georgia, making correct change, and sending money to his family in Mexico.  (Resp't Ex. 1, at 7-8, 10.)  Two Federal Bureau of Prisons psychologists who evaluated movant expressed no concern that he was mentally retarded or unable to function independently in prison.  (Id. at 11.)

Movant's performance on the Test of Nonverbal Intelligence-4 ("TONI-4"), Trail Making Tests, Bender Motor Gestalt Test, and Rey Fifteen Item Test also indicated that

he was feigning low intellect and memory impairment.  (Resp't Ex. 1, at 8-9.)  Dr. Duncan diagnosed movant with malingering and adult antisocial behavior and concluded that he most likely had low average intellectual abilities.  (Id. at 9-10, 14.) Dr. Duncan also determined that the evidence weighed against a finding that movant was mentally retarded when he pleaded guilty.  (Id. at 12.)

Although movant criticizes some aspects of Dr. Duncan's testing, movant acknowledges that the results are mostly consistent with Dr. Herrera's testing in 2007. (Mov't Br. [198] 3-8.)  Movant fails to address the statements that he made to Dr. Duncan regarding movant's life activities and knowledge of the criminal justice system. Those statements are inconsistent with movant's claim of incompetency.

Movant also repeats his arguments concerning Dr. Flores's 2011 evaluation. (Mov't Br. [198] 8-10, 14.)  The undersigned previously rejected those arguments. (Final R&R 8-14.)  Relying on Dr. Flores's testimony, movant contends that his repeated affirmations of understanding during the plea colloquy should be discounted because "mentally retarded people try hard to mask their intellectual deficits," and "[a]n affirmative answer is often a masking response."  (Mov't Br. [198] 18-19.)  That possibility, like Dr. Flores's overall evaluation, raises some doubt about movant's competency.   However, movant must demonstrate his incompetency by a

8

preponderance of the evidence.  Having considered all of the evidence in this case, the undersigned concludes that movant has failed to meet his burden.

Accordingly, the undersigned **RECOMMENDS** that movant be denied relief as to ground one of the Motion to Vacate.

### B.   <u>Remaining Grounds</u>

Movant claims that (1) his "guilty plea was not knowingly, intelligently, and voluntarily entered" (ground three); and (2) the District Court improperly "failed to inquire about [movant's] competency prior to accepting the guilty plea" (ground four). (Mot. Vacate 7-8.)  Because movant did not appeal, the undersigned determined in the Final R&R that grounds three and four are procedurally defaulted.  (Final R&R 5-6, 17-18.)  Movant now argues that respondent waived procedural default by failing to raise the issue.  (Mov't Br. [198] 22-23, 26.)  In its brief following the evidentiary hearing, respondent does not address movant's argument.  In an opinion issued after the Final R&R, the United States Court of Appeals for the Eleventh Circuit indicated that movant's argument is correct.  <u>See</u> <u>Bryant v. Warden, FCC Coleman-Medium</u>, 738 F.3d 1253, 1261 (11th Cir. 2013).  Therefore, the undersigned will consider grounds three and four on the merits.

9

### 1.   **Ground Three**

Movant's repeated affirmations of understanding, made under oath during the plea colloquy, are presumed true, and he bears "a heavy burden" to show that those statements were actually false.  United States v. Garcia, 322 F. App'x 918, 919 (11th Cir. 2009) (per curiam).  Movant has not met his heavy burden for the same reasons that his substantive competency claim (ground one) fails.  See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (concluding that movant's § 2255 allegations in direct conflict with statements during plea colloquy and unsupported by evidence did not establish involuntariness of plea).

### 2.   **Ground Four**

Movant's claim that the District Court should have conducted a competency hearing is a procedural competency claim pursuant to Pate v. Robinson, 383 U.S. 375 (1966).  See James, 957 F.2d at 1569-71.  Movant must establish that the [District Court] had "information raising a bona fide doubt as to [movant's] competency."  Id. at 1570.  "Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion; but [t]here are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed."  Watts v. Singletary, 87 F.3d 1282, 1287 (11th Cir. 1996) (quoting

10

Drope v. Missouri, 420 U.S. 162, 180 (1975)) (internal quotation marks omitted).  If movant establishes a "bona fide doubt," respondent must then prove movant's competency.  James, 957 F.2d at 1570.

Movant relies on the nine instances during the plea colloquy in which he asked the District Court for clarification or stated that he did not understand the Court's question or had forgotten something, even though counsel had "spent six hours in the week before the guilty plea explaining the case and concepts to [movant]."  (Mov't Br. [198] 25.)  However, as the undersigned previously explained, movant answered the Court's questions without the need for clarification or further explanation thirty-six times, which was four times as often as he requested clarification or further explanation.  (Final R&R 10-11.)  When movant received clarification or further explanation from the Court, he answered the question, indicating that he understood.  (Id.)

Movant also relies on the presentence investigation report, which cited Dr. Herrera's finding that movant was mentally retarded.  (Mov't Br. [198] 25-26.) "Mental retardation alone does not make a person incompetent to [plead guilty]." United States v. Glaspy, 401 F. App'x 430, 432 (11th Cir. 2010) (per curiam) (citing Atkins v. Virginia, 536 U.S. 304, 318 (2002)).  Despite movant's mental retardation, Dr. Herrera found that movant had a basic understanding of the trial process and could

11

assist his attorney as long as he received repeated explanations and sufficient time. (Final R&R 11.)  Furthermore, movant explains that Dr. Herrera's "role was not to assess competency, but rather [movant's] level of functioning for mitigation purposes." (Mov't Br. [198] 13.)  The undersigned concludes that movant has not established a "bona fide doubt" as to his competency in the information available to the District Court during movant's criminal case.

Accordingly, the undersigned **RECOMMENDS** that movant be denied relief as to grounds three and four of the Motion to Vacate.

## III.    <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented

AO 72A
(Rev.8/8
2)

were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529

U.S. 473, 484 (2000) (internal quotation marks omitted).

> When the district court denies a [motion to vacate] on procedural grounds without reaching the prisoner's underlying constitutional claim . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (citing Slack, 529 U.S. at 484)

(internal quotation marks omitted).

The undersigned **RECOMMENDS** that a certificate of appealability be denied

because the resolution of the issues presented is not debatable.  If the District Court

adopts this recommendation and denies a certificate of appealability, movant is advised

that he "may not appeal the denial but may seek a certificate from the court of appeals

under Federal Rule of Appellate Procedure 22."  28 U.S.C. foll. § 2255, Rule 11(a).

## IV.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that (1) the

Motion to Vacate [146] be **DENIED**, and (2) a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge in

civil action number 4:12-cv-109-HLM-WEJ.

13

**SO RECOMMENDED**, this 7th day of May, 2015.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

14